IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

KARI L. LANDUYT,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 17-CV-0019-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff, Kari L. Landuyt, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Landuyt argues that the administrative law judge (ALJ), Julie K. Bruntz, erred by failing to find Landuyt's fibromyalgia constitutes a severe impairment, in assigning weight to her treating physician's opinions, and by failing to order a consultative examination. I recommend **affirming** the ALJ's decision.

## I.    BACKGROUND[1]

Landuyt filed an application for DI benefits on June 17, 2013, alleging disability as of May 11, 2012, based on severe osteoarthritis in her back, numbness and tingling in her feet and hands, tight hip and thigh muscles, grinding and clicking in her knees, fatigue, heart arrhythmia, and balance issues. AR 84-85. Her application was denied initially in August 2013 and on reconsideration in November 2013. AR 84-95, 96-110. As part of those reviews, state agency consultants from the Iowa Disability Determination

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

Service (DDS) evaluated Landuyt's physical residual functional capacity[2] (RFC), and assessments were completed by Tracey Larrison, D.O., in August 2013, and by John May, M.D., in November 2013. AR 91-93, 105-08.

Landuyt requested a hearing before an ALJ, and after a continuance on June 16, 2015, to allow Landuyt to obtain representation, a video hearing was held on October 27, 2015. AR 13, 28-33. Landuyt was 40 years old at the onset of her alleged disability and 44 years old at the time of her administrative hearing. AR 33, 38, 85. On December 8, 2015, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[3] for determining whether Landuyt was disabled. AR 9-21. The ALJ found that Landuyt suffered from severe impairments[4] of disorders of the back, cardiac dysrhythmia, and myofascial pain syndrome but that none of Landuyt's impairments met or equaled applicable listings. AR 14-15. To determine whether Landuyt's impairments prevented her from working, the ALJ determined:

> [Landuyt] has the [RFC] to perform light work . . . such that she can lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Her ability to push and pull, including the operation of hand and foot controls, would be unlimited within those weights. She is right-hand dominant. She could occasionally climb ramps

---

[2] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[4] The ALJ also found that Landuyt suffers from non-severe impairments of depression/anxiety in conjunction with myofascial pain syndrome and mild obesity. AR 15.

and stairs, as well as occasionally balance, stoop, kneel, and crouch. She could never climb ladders, ropes, or scaffolds, and never crawl. She would need to avoid concentrated exposure to extreme cold, fumes, odors, gases, poor ventilation, dust, and wetness.

AR 15.

In evaluating Landuyt's RFC, the ALJ considered Landuyt's statements about her symptoms (which the ALJ did not fully credit), statements from Landuyt's husband and several friends, medical treatment records, and the July 2015 medical source statement from Landuyt's family physician, Clete Younger, M.D. (to which the ALJ gave little overall weight). AR 16-20, 714-19. Based on her determination of Landuyt's RFC, the ALJ found that Landuyt could perform her past relevant work as a teller and ticket seller. AR 20.

The Appeals Council denied Landuyt's request for review on January 11, 2017 (AR 1-4), making the ALJ's decision that Landuyt was not disabled the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Appeals Council admitted additional medical records from Dr. Younger (from November 13, 2015, through March 4, 2016) and an additional medical source statement from Dr. Younger (this one specifically for fibromyalgia) dated March 9, 2016, into the record. AR 5, 766-785. Landuyt filed a timely complaint in this court (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 13, 14), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d

3

at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Landuyt argues that the ALJ erred in three ways: (1) failing to find Landuyt's fibromyalgia was a severe impairment; (2) attributing weight to Dr. Younger's treating-source opinion; and (3) failing to order a consultative examination. *See* Doc. 13. I will address each of these arguments in turn.

### A. Fibromyalgia as a Severe Impairment

The ALJ erred, according to Landuyt, by failing to find that her fibromyalgia was a severe impairment, which she further argues affected the weight the ALJ assigned to Dr. Younger's treating source statement. Doc. 13 at 4.

> A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statements of symptoms (see [20 C.F.R.] § 404.1527).

*Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (alterations in original) (citations omitted) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)); 20 C.F.R. § 404.1508). "[T]he Eighth Circuit [has] recognized that fibromyalgia is a chronic condition involving inflammation of the fibrous and connective tissue, 'causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue.'" *Baker v. Astrue*, No. 4:05CV2253 FRB, 2009 WL 510102, at *17 (E.D. Mo. Mar. 2, 2009) (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003)). A claimant can establish that she has fibromyalgia for consideration of

4

disability benefits by providing evidence from a licensed physician (a medical or osteopathic doctor), although the ALJ "cannot rely upon the physician's diagnosis alone," and the record must demonstrate that the physician reviewed the claimant's medical history and examined the claimant. Social Security Ruling (SSR) 12-2p, 77 Fed. Reg. 43640, 43641 (July 25, 2012). In this context, an ALJ "review[s] the physician's treatment notes to see if they are consistent with a diagnosis of [fibromyalgia][;] [to] determine whether the [claimant's] symptoms have improved, worsened, or remained stable over time[;] and [to] establish the physician's assessment over time of the [claimant's] physical strength and functional abilities." *Id.* An ALJ may find that a claimant has fibromyalgia if she has all three of the following: (1) a history of widespread pain (on both the left and right sides and above and below the waist) for at least three months, which may fluctuate in presence and intensity; (2) either at least eleven positive tender points during examination or repeated manifestations of six or more signs or symptoms of fibromyalgia; and (3) the exclusion of other disorders as the cause of these symptoms. *Id*. at 43641-42, 43642 nn.9-11. The tender points under the second factor must be on both the left and right sides of the body, as well as both above and below the waist. *Id*. at 43641. The signs or symptoms under the second factor include muscle pain, weakness, fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, chest pain, dry mouth, heartburn, shortness of breath, loss of appetite, easy bruising, and hair loss. *Id*. at 43642 & nn.9-11. "Consistent trigger-point findings and consistent complaints during frequent physicians' visits of variable and unpredictable pain, stiffness, fatigue, and ability to function provide evidence of fibromyalgia, which can be disabling." *Baker*, 2009 WL 510102, at *17.

    Landuyt argues the ALJ improperly found that although "[f]ibromyalgia was noted later in the treatment records," no "formal fibromyalgia tender point testing was administered, per the requirements of SSR 12-2p." AR 17. Landuyt points to evidence (Doc. 13 at 6) that Dr. Younger administered such testing in March 2016 (after the ALJ

issued her written opinion) and found all 14 tender points positive bilaterally (AR 774), as well as other treatment notes that discuss Landuyt's "tender points" without listing the location and number of tender points (AR 725-26, 731-32, 737, 740, 755, 762 (noting "multiple tender points in neck and back" and "[n]o focal tenderness and no focal bone tenderness" in September and October 2014, before Landuyt was diagnosed with fibromyalgia; "multiple tender points in both sides" and "[s]table diffuse tender points of the upper back and low back" in July 2015, after Landuyt was diagnosed with fibromyalgia; "stable tender points of chronic intermittent and variable joint pains" in August 2015; and "[d]iffuse tender points particularly in her back unchanged from the last visit" in October 2015)). Landuyt argues the ALJ's error was material because if the ALJ had found fibromyalgia to be a severe impairment, she would have credited Dr. Younger's opinions. Doc. 13 at 6-7.

Here, the record shows the ALJ was aware that Landuyt had recently been diagnosed with fibromyalgia at the time of the hearing. AR 39, 55, 82 (noting her fibromyalgia diagnosis).[5] The ALJ found that Landuyt had the severe impairment of myofascial pain syndrome, but not fibromyalgia. AR 14. Myofascial pain syndrome is a "disorder[] that may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia]." SSR 12-2p, 77 Fed. Reg. at 43642 n.7. Substantial evidence in the record (including Dr. Younger's own treatment notes) supports that Landuyt suffered from myofascial pain syndrome, which involves similar symptoms as fibromyalgia. *See* AR 451-60 (prior provider diagnosing osteoarthritis, back pain, and arthritis that were improved with medication and physical therapy), 505-12[6] (Dr.

---

[5] Landuyt did not allege fibromyalgia as an impairment in her DI application, which may be "significant" but is not dispositive. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) ("[T]hat [claimant] did not allege depression in her application for disability benefits is significant" to whether her depression was a severe impairment, "even if the evidence of depression was later developed").

[6] The administrative record contains multiple duplicate treatment records. *See, e.g.*, AR 505-12, 746-50 (Dr. Younger's treatment records from July 24, 2013, to September 13, 2013).

Younger's records diagnosing chronic low back pain with no significant functional limitations and controlled by medication), 736-45 (Dr. Younger's records diagnosing myofascial pain syndrome). In support of her argument that the ALJ erred by failing to include fibromyalgia as a severe impairment, Landuyt cites Dr. Younger's March 2016 treatment notes and medical source statement (AR 774-85), which document he found that Landuyt had 14 positive tender points and that she met the criteria for a fibromyalgia diagnosis. Doc. 13 at 6. These records were submitted after the ALJ's written decision in December 2015[7] and were therefore not part of the record the ALJ considered (the Appeals Council admitted this evidence into the record but found it "does not provide a basis for changing the [ALJ's] decision"). AR 2, 5. Other records from Dr. Younger (from July to November 2015), issued after the administrative hearing but before the ALJ's written opinion, include a diagnosis of fibromyalgia. AR 724-32, 754-68. Although these records note "multiple tender points," they do not indicate the number and location of tender points, which does not seem sufficient to meet the requirements of tender-point testing under SSR 12-2p (as the ALJ found). *See* 77 Fed. Reg. at 43641 n.6 (noting that the ALJ may use the six-signs-or-symptoms criteria "to determine [a medically determinable impairment] of [fibromyalgia] if the case record does not include a report of the results of tender-point testing[] or the report does not describe the number and location on the body of the positive tender points"). But SSR 12-2p can also be met

---

[7] The first treatment record to include a fibromyalgia diagnosis was July 2, 2015 (AR 730), which was after the administrative hearing on June 16, 2015, (AR 28) but prior to the ALJ's written decision of December 8, 2015 (AR 21). Even when a formal diagnosis of fibromyalgia comes after an ALJ issues a decision, evidence in the record may show that the ALJ considered the symptoms and effect that condition has on a claimant. *See Baker*, 2009 WL 510102, at *17 n.29 (noting that "a review of the ALJ's decision shows him to have determined [claimant's] condition of myofascial pain syndrome, a condition similar in symptomatic form to fibromyalgia" and that although not formally diagnosed as fibromyalgia until a later date, substantial evidence supported the ALJ's consideration of those symptoms and finding that they did not prevent the claimant from performing work activity).

if treatment notes demonstrate "repeated manifestations of six . . . symptoms[ and] signs" of fibromyalgia, *id.* at 43642, which the ALJ did not address in this case.

Nevertheless, even if the ALJ erred in finding that Landuyt suffered from myofascial pain syndrome but not fibromyalgia, any error is harmless.[8] Regardless of which impairments are determined to be severe at step two, in determining a claimant's RFC "[a]t step four[,] the ALJ considers both severe and non-severe impairments[, and t]herefore, the real issue is whether the ALJ properly determined [the claimant]'s RFC at step four of the sequential process." *Sumners v. Astrue*, No. 09-5065-CV-S-RED-SSA, 2010 WL 2955367, at *2 (W.D. Mo. July 23, 2010) (citation omitted). In this case, the ALJ did not find Landuyt was not disabled at step two, because the ALJ did find she had severe impairments (including myofascial pain syndrome). AR 14-15. The ALJ also considered the symptoms for myofascial pain syndrome (which appear to be the same or very similar symptoms that caused Dr. Younger to diagnose fibromyalgia) and their effects on Landuyt in determining her RFC. AR 16-20. Thus, the ALJ did not err in failing to find Landuyt had a severe impairment of fibromyalgia. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (8th Cir. 2008) ("any error" in determining severe impairments at step two "became harmless when the ALJ reached the proper conclusion that [the claimant] would not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); *Harris v. Astrue*, No. 4:10-CV-2198 (CEJ), 2012 WL 785493, at *7 (E.D. Mo. Mar. 9, 2012) (holding that although ALJ erred in determining fibromyalgia was not a severe impairment, the error was "not significant because there was minimal difference in the functional symptoms between the conditions the ALJ found severe" and fibromyalgia (footnote omitted)); *cf. Parker v. Astrue*, No. 12-1212-SSA-CV-W-MJW, 2013 WL 3968767, at *3 (W.D. Mo. July 31, 2013) (finding reversible error was not harmless when ALJ not only improperly

---

[8] This reasoning also supports the Appeals Council's determination that the additional evidence did not provide a basis for changing the ALJ's decision.

failed to find condition was a severe impairment, but also failed to consider the condition and its symptoms in determining the claimant's RFC). And as discussed further below, the ALJ gave numerous reasons for discrediting Dr. Younger's opinions and did not rely solely on Dr. Younger's diagnosis of fibromyalgia in assigning his opinions little weight.

I recommend finding that any error in determining Landuyt's severe impairments at step two in the sequential process was harmless.

### B. Evaluation of Dr. Younger's Opinions

Landuyt argues the ALJ erred in weighing Dr. Younger's medical source statements because the ALJ: (1) failed to give good reasons for discounting the opinions; (2) failed to adopt all the limitations contained in the opinions; and (3) declined to assign the opinions controlling weight. Doc. 13 at 7-17. When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b) (2017).[9] The ALJ must give controlling weight to a treating-source opinion if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). The ALJ considers the following factors to determine the weight to assign the opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

---

[9] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The Eighth Circuit has applied these new rules retroactively, which are substantively the same as the old rules. *See, e.g.*, *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). I cite to the new 2017 regulations.

9

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 404.1527(c) (2017). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

Dr. Younger treated Landuyt from July 24, 2013, through March 2016; he saw her four times from July to November 2013 (once in July, twice in September, and once in November), three times in 2014 (in March, September, and October), five times in 2015 related to pain (twice in July 2015, and once in August, October, and November 2015), and twice in 2016 (in February and March). AR 505-12, 714-19, 724-32, 737-45, 754-85. In July 2013, Dr. Younger completed a medical source statement in which he found that Landuyt could sit for more than two hours at a time for a total of at least six hours in an eight-hour workday; that she could stand or walk for fifteen minutes at a time for a total of less than two hours; that she would need to walk around every thirty minutes and take unscheduled breaks at least hourly; and that she would need to shift at will between standing, sitting, and walking. AR 715-17. He also found that she could occasionally lift ten pounds and rarely lift twenty pounds, that her symptoms would interfere with her attention and concentration more than twenty-five percent of the time, and that she would miss work more than four days a month. AR 717-18. In his March 2016 statement, he found she could only sit for fifteen minutes before needing to stand, but she could stand or walk for thirty minutes before needing to sit, and he further opined that she could sit and stand each for a total of less than two hours in an eight-hour workday. AR 782. He found that she would need to walk around every fifteen minutes and that she could rarely lift weight under twenty pounds (and could never lift more than that). AR 783. He opined for the first time that she would have limitations in her hand and arm movements, and he again found that her concentration would be interrupted

10

more than twenty-five percent of the time and that she would miss more than four days of work each month. AR 783-84.[10]

Landuyt argues that the medical evidence supports Dr. Younger's opinions and that therefore the ALJ should have given them controlling weight. Doc. 13 at 10-12. In particular, Landuyt cites to portions of the record showing tender points on examination (AR 725-26, 731-32, 737, 740, 755, 762). Doc. 13 at 11. Landuyt also argues that Dr. Younger noted in his March 2016 statement that Landuyt had additional symptoms of fibromyalgia (including fatigue, depression, cognitive dysfunction, anxiety, waking unrefreshed, muscle pain or weakness, numbness or tingling, abdominal pain and cramps, nervousness, chest pain, blurred vision, and dry mouth) that are well-supported by the record. Doc. 13 at 11-12. There is support in Dr. Younger's records that Landuyt experienced additional symptoms, including numbness (AR 507), heartburn (AR 509), depression (AR 725, 755), dry mouth and tiredness (AR 737), nausea (AR 755), and sleep disturbance (AR 737, 766). Some of Landuyt's symptoms, however, were attributable to medication side effects. AR 509 (heartburn), 737 (dry mouth and mild sedation), 755(nausea). Other portions of the record show a lack of symptoms. *See* AR 511, 740 (no nausea, vomiting, stomach issues, or shortness of breath), 727 ("doing OK"), 730 (no acute depression or anxiety), 744 (no sleep disruptions and good mood overall).

---

[10] Dr. Younger's July 2013 statement is internally inconsistent (Landuyt can sit for more than two hours at a time but must walk every thirty minutes and shift between sitting and standing at will), and his July 2013 and March 2016 statements are inconsistent with each other (she can stand fifteen versus thirty minutes; she can sit fifteen minutes versus more than two hours). This further supports the ALJ's decision to assign Dr. Younger's opinions little weight. *See Goff*, 421 F.3d at 790 ("An ALJ may 'discount or even disregard the opinion of a treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000))); *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("Physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.").

The ALJ found that Dr. Younger's opinions were inconsistent with his treatment records, including findings from physical examinations. The ALJ noted that Landuyt demonstrated only subjective tenderness and pain (AR 18), but this is not necessarily inconsistent with fibromyalgia. *See Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (holding that "the ALJ misunderstood fibromyalgia" when "the ALJ . . . stated that [the claimant's] symptoms of muscle aches and pains had not been substantiated by objective medical testing"). Accordingly, I do not believe this was a good reason, standing alone, to not fully credit Dr. Younger's opinions. Dr. Younger's treatment notes, however, do contain inconsistencies, including with the extreme limitations contained in his medical source statements. Interestingly, a record from an October 2015 visit notes that Landuyt has been diagnosed with fibromyalgia since September 19, 2014 (AR 754), which is consistent with the date listed on Dr. Younger's March 2016 treating source statement (AR 778). His record from the visit on September 19, 2014, however, includes a diagnosis of myofascial pain syndrome, not fibromyalgia. AR 739-41; *see also* AR 737-38 (October 2014 treatment record). There is no mention of fibromyalgia in the treatment records until July 2015 (AR 730-32) (after the administrative hearing in June 2015, at which the ALJ asked Landuyt if her doctor had performed any "tender point tests" (AR 82)).

The treatment notes also show that aside from pain and some limited range of motion, the remaining portions of the physical examinations (motor strength, tone, sensation, reflexes, and gait) were generally normal. AR 506, 511, 726, 732, 737, 740, 743, 745, 747, 755, 763, 767. Although a record from February 2016 contains a report from Landuyt that she "still experienced his [sic] daily pain which is very limiting," there is no indication what these limitations were. AR 772. Dr. Younger's records also lack indications that Landuyt was specifically limited in her ability to function and in fact, show that her pain did not significantly affect her functional abilities. *See* AR 511 ("fairly functional at her current level of pain" in July 2013), 743 ("no exertional symptoms" in March 2014). Other treatment records contain similar information. AR 453 (Landuyt

reported in August 2012 that although she quit her job due to scheduling issues and doctor's appointments, she was "pretty active at home . . . [and] does all the house chores without any issues"). Inconsistencies with treatment notes provide a good reason to not give a treating physician's opinion controlling weight. *See Hamilton v. Astrue*, 518 F.3d 607, 610-11 (8th Cir. 2008); *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007) (records showing tender points but also normal examinations in other areas, such as range of motion, and recommendations of exercise and a nonsteroidal drug demonstrated inconsistencies). The treatment records therefore support the ALJ's finding that Dr. Younger's opinions of Landuyt's ability to stand, walk, and lift were not supported by the physical findings.

Multiple records also support the ALJ's finding that Dr. Younger's opinions were inconsistent with the moderate relief that Landuyt's medications provided. AR 506 (noting that Landuyt's pain was under better control and continuing medications and referring for physical therapy); 507 (medication helping); 724 ("moderate improvement" with medications); 737 (medication provided "faster recovery of pain after activity"); 755 (pain improved 60% with medication); 766-67 (medication was working well, pain was better controlled, and Landuyt was not having to take daily nonsteroidal anti-inflammatory drugs); 771 (noting Landuyt had "improved with [current medications] but still ha[d] residual symptoms," and Landuyt was advised that the goal was to improve pain and that Dr. Younger "may not be able to eliminate pain altogether"). In particular, Dr. Younger noted on March 4, 2016 (the same day as his second opinion statement) that Landuyt had "good control [of her symptoms] with [her] current medications" and that these medications "have helped her symptoms." AR 774. Treatment records from previous providers also show Landuyt's symptoms responded well to medication and physical therapy. AR 338, 451, 453, 457-58, 535, 595, 598, 650, 710, 712. A claimant's condition that is "controllable and amenable to treatment [] 'do[es] not support a finding of disability.'" *Martise*, 641 F.3d at 924 (quoting *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009)). The record therefore supports the ALJ's conclusion that

13

Dr. Younger "somewhat overstated" Landuyt's need to take unscheduled breaks, alternate positions, miss work, and ability to stay on task (AR 18).

The ALJ also noted inconsistency between Dr. Younger's opinions and Landuyt's reported activity level. Substantial evidence supports this finding. Landuyt reported the ability to perform various daily activities, including cooking, performing household chores (such as doing dishes, dusting, laundry, and making her bed), gardening, playing games on her phone, chatting with friends on Facebook, and crocheting. AR 64-69, 229, 231. She generally goes outside daily, attends church weekly (including fellowship after services for around an hour and a half), can drive (up to an hour), and shop in stores for 15 minutes to two hours at a time. AR 42, 71-73, 230. She also testified she can sit for around an hour to an hour and a half before needing to readjust positions or walk around for a little bit, and she stated that she did not need to take extra breaks at her prior job (as a bank teller). AR 45-46, 53. These reports further undermine Dr. Younger's opinions.

The ALJ also found that the subjective symptoms and limitations reported by Landuyt were not consistent with the record (Landuyt does not challenge this finding). AR 19-20. Dr. Younger's records discuss Landuyt's subjective reports of limitations (AR 772), and it appears, based on his records lacking documentation of the specific type and extent of any limitations, that he based his opinions of Landuyt's functional abilities, at least in part, on her subjective complaints. An ALJ may discount a treating source's opinion to the extent it is based on the claimant's subjective complaints that were not fully credited. *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("Because the ALJ reasonably concluded that [claimant's] statements lacked credibility, [the ALJ] could discount [the treating source's] opinion to the extent that it relied on [claimant's] subjective complaints."). The ALJ therefore provided good reasons for the weight given to Dr. Younger's opinions.

Landuyt argues the ALJ erred by not adopting all of the functional limitations contained in Dr. Younger's treating source statements. Doc. 13 at 8-10. The ALJ clearly

14

considered Landuyt's symptoms and the specific limitations contained in Dr. Younger's opinions. *See* AR 18. I find, however, that the ALJ provided good reasons for the weight assigned to Dr. Younger's opinions. Therefore, the ALJ was not required to adopt the limitations contained in Dr. Younger's statements.[11]

The ultimate issue is not whether Landuyt experiences pain and symptoms but rather, the effect those symptoms have on her ability to work. *See Perkins v. Astrue*, 648 F.3d 892, 900-01 (8th Cir. 2011) (ALJ can only find claimant disabled if the claimant's fibromyalgia pain was so severe that it prevented her from working); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that "[a]lthough a claimant need not be bedridden . . . to be unable to work, . . . extensive daily activities" may be inconsistent with disabling symptoms). Although this record could support a different outcome, I find, especially in light of the deferential standard of review, that substantial evidence supports the ALJ's decision to give Dr. Younger's opinions little weight.

### C. Consultative Examination

Landuyt argues the ALJ erred by failing to order a consultative examination to confirm Dr. Younger's diagnosis of fibromyalgia. Doc. 13 at 18. Landuyt notes the ALJ's statement that "it does not appear formal fibromyalgia tender point testing was administered, per the requirements of SSR[ ]12-2p" (AR 17), and argues that if the ALJ did not believe the record was fully developed, she should have ordered a consultative examination. Doc. 13 at 18.

The regulations provide that the Social Security Administration "may purchase a consultative examination to try to resolve an inconsistency in the evidence[] or when the evidence as a whole is insufficient to . . . make a determination or decision on [the]

---

[11] The ALJ did not reject all of Dr. Younger's opined limitations; the ALJ found that Landuyt could sit for six hours in an eight-hour work day (AR 15), which was consistent with Dr. Younger's July 2015 opinion (AR 716).

claim." 20 C.F.R. § 404.1519a(b); *see also* SSR 12-2p, 77 Fed. Reg. at 43643. "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [the ALJ] to make an informed decision." *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (per curiam) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)). A consultative examination will not be purchased, however, "solely to determine if a person has [fibromyalgia] in addition to another [medically determinable impairment] that could account for [the claimant's] symptoms." SSR 12-2p, 77 Fed. Reg. at 43643.

Here, there were no inconsistencies in the evidence requiring a consultative examination, and the evidence was sufficient for the ALJ to assess Landuyt's RFC and determine whether she could perform past relevant work. The ALJ found that Landuyt's disorders of the back and myofascial pain syndrome were severe impairments that significantly affected her ability to work. AR 14. In considering what impact these impairments had on Landuyt's RFC, the ALJ reviewed the medical records and evidence (in addition to other information contained in the record). AR 15-20. The ALJ was able to determine Landuyt's RFC based on this information. I believe the RFC determination is supported by substantial evidence (and Landuyt does not argue otherwise). The ALJ therefore had sufficient evidence and did not err by failing to order a consultative examination. *See Martise*, 641 F.3d at 926-27 (rejecting argument that the ALJ should have ordered a consultative examination when the ALJ considered the medical evidence and made factual findings about the evidence that were supported by substantial evidence). Regardless of the ALJ's finding regarding fibromyalgia, the ALJ fully considered Landuyt's various symptoms that were consistent with fibromyalgia in determining Landuyt's RFC. AR 17-20. Therefore, I find the ALJ's decision should be affirmed. *See Baker*, 2009 WL 510102, at *17.

### *III.* *CONCLUSION*

I recommend that the district court judge **affirm** the decision of the Commissioner and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 5th day of March, 2018.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa